ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FILED
U.S. DISTRICT COURT

2010 SEP 14 PM 1:18

CLERK
SO. DIST. OF GA.

| | |
|---|---|
| EUGENE THOMAS, | ) |
| Plaintiff, | ) |
| v. | ) CV 310-019 |
| RALPH KEMP, Warden; WILLIAM CONNOR, Chief; JAMES FERGUSON, CEO of Corrections Corporation of America; SHEVONDAH FIELDS, Inmate Affairs and Appeals; and FNU RICKS, Mailroom Clerk,[1] | ) |
| Defendants. | ) |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate currently incarcerated at Georgia State Prison in Reidsville, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983.[2] Because he is proceeding *in forma pauperis*, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§

---

[1] The **CLERK** is **DIRECTED** to correct the spelling of William Connor and Shevondah Fields.

[2] At the time relevant to the claims alleged in this case, Plaintiff was incarcerated at Wheeler Correctional Facility ("WCF") in Alamo, Georgia.

1915(e) & 1915A.

## I. BACKGROUND

Upon review of Plaintiff's complaint, the Court finds that Plaintiff has named the following defendants: (1) Ralph Kemp, Warden of WCF; (2) William Connor, Chief of Security at WCF; (3) James Ferguson, CEO of Corrections Corporation of America ("CCA"); (4) Shevondah Fields, Inmate Affairs and Appeals, Georgia Department of Corrections ("DOC"); and (5) FNU Ricks, Mailroom Clerk at WCF. (Doc. no. 1, pp. 1, 6-9.)

Plaintiff alleges that on April 20, 2009, Defendant Ricks delivered two books that had been mailed to Plaintiff by a friend. (Id. at 6.) Plaintiff asserts that after observing the title of the second book, <u>Are Prisons Obsolete?</u>, Defendant Ricks asked him who sent the books, and Plaintiff replied that it was "the person on the return address section of the box." (Id.) Plaintiff states that Defendant Ricks said, "Oh, who are you getting smart with?," and "I ain't got to give you these...books" before handing him the second book. (Id.) Plaintiff then claims he told Defendant Ricks that it was nice of her to give him the books, to which Defendant Ricks responded by demanding that Plaintiff return the books to her or she would write up Plaintiff in a disciplinary report and have officers "shake down" his cell. (Id.)

Plaintiff states that he filed an informal grievance about the encounter, and that Defendant Ricks destroyed the two books in retaliation. (Id.) Plaintiff further claims that Defendant Ricks told him that she had destroyed the two books in retaliation when she made another delivery to his cell and that he communicated both incidents to Defendants Connor, Kemp, and Ferguson and that all three "upheld [Defendant] Rick's retaliation, out of

2

conspiracy." (Id. at 7, 8.) Plaintiff claims that, ultimately, the books were neither returned to him nor to the original sender. (Id. at 7.)

Plaintiff also claims that Defendant Kemp's reason for retaliation against Plaintiff was that Defendant Kemp was a witness in previous litigation by the Plaintiff against Coffee Correctional Facility. (Id. at 8.) Plaintiff further asserts that when he told Defendant Kemp about the actions of Defendant Ricks, Defendant Kemp informed Plaintiff that he was "with my officials, come hell or high water." (Id.) Plaintiff claims that he asked Defendant Kemp if that was true "even though they are violating my constitutional rights?" (Id.) Plaintiff then states that Defendant Kemp responded by telling Plaintiff that he did not want to hear about any legal arguments, and that Plaintiff was lucky that it was not "the old days." (Id.)

Plaintiff is also dissatisfied with the grievance appeals procedure as handled by Defendant Fields at Inmate Affairs and Appeals. (Id. at 7, 8.) According to Plaintiff, he filed an informal grievance, and a formal grievance which were both denied. (Id. at 3.) Plaintiff provides that he appealed the denial of his grievance to Inmate Affairs and Appeals on July 13, 2009 and, at the time of filing his complaint, nearly seven months later, had yet to receive a response. (Id. at 9.) Plaintiff claims that Defendant Fields failed to comply with the applicable Standard Operating Procedure of responding to his appeal within 90 days out of retaliation and conspiracy. (Id.)

Plaintiff seeks monetary compensation, including punitive damages, against each named Defendant. (Id. at 5.)

3

## II. DISCUSSION

A. **Grievance Appeals Claim**

*Liberally* construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, to the extent Plaintiff alleges that his constitutional rights were violated because his grievance appeal was mishandled in some manner, his claim must fail. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983).

The Eleventh Circuit's decision in Wildberger v. Bracknell, 869 F.2d 1467 (11th Cir. 1989) (*per curiam*) is instructive on this point. In that case, the plaintiff alleged numerous claims, including a violation of "the grievance procedures established by the State Department of Corrections." Id. at 1467. Addressing the plaintiff's claims, the magistrate judge determined that the "violation of the grievance procedure did not rise to the level of

4

a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution." Id. In the end, the magistrate judge determined that none of the plaintiff's claims had merit. Id. at 1468. Although the Eleventh Circuit found error with the trial court's analysis of one of the plaintiff's retaliation claims, it found no error with the trial court's adoption of the magistrate judge's recommendation regarding the plaintiff's grievance claim. Id.

In this case, Plaintiff states that Defendant Fields violated his rights by failing to respond to his appeal within the 90 days allotted by the applicable Standard Operating Procedure. (Doc. no. 1, pp. 8, 9.) However, alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (*per curiam*). "There is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. Therefore, Plaintiff's claim against Defendant Fields, regarding an alleged violation of the grievance appeals procedures fails as a matter of law.

**B.     Respondeat Superior**

*Liberally* construing Plaintiff's allegations against Defendant Connor in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that he fails to state a claim based on the theory of respondeat superior. Plaintiff claims that Defendant Connor, who is Chief of Security at WCF, is in some manner Defendant Ricks' supervisor, and blames Defendant Connor for the actions of Defendant Ricks. However, the only involvement that Plaintiff claims Defendant Connor had was: (1)

5

a letter written to him by the Plaintiff informing him of the incident with Defendant Ricks; and (2) allegedly providing assurances that he was supervising the situation with Ricks and that Plaintiff would either get the books back or they would be mailed back to the original sender.

According to the United States Court of Appeals for the Eleventh Circuit, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold a supervisory official liable, Plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

Plaintiff's allegations fail to demonstrate that Defendant Connor was a participant in any alleged constitutional violation. Initially, the supervisory connection and authority that Plaintiff indicates Defendant Connor has over Defendant Ricks, a mailroom worker, seems tenuous at best. In addition, Plaintiff has merely asserted that he sent a single letter to Defendant Connor, and that Defendant Connor stated one time that he was supervising the situation and Plaintiff would either get the books back or they would be mailed back to the original sender. These actions fall short of elevating Defendant Connor to the level of a participant in the alleged constitutional violations of Defendant Ricks.

Similarly, Plaintiff fails to allege a "causal connection" between Defendant Connor

and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[3] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff's assertion that Defendant Connor merely knew about the alleged actions of Defendant Ricks after they occurred and that he was "supervising the matter" neither establishes any knowledge by Defendant Connor of any history of any widespread abuse, nor does it demonstrate that Defendant Connor was in any way responsible for the creation of a custom or policy that lead to the actions of Defendant Ricks. Further, Plaintiff makes no claim that Defendant Connor directed Defendant Ricks to act in taking back the books from the Plaintiff. In sum, Plaintiff has failed to state a claim upon which relief may be granted against Defendant Connor.

---

[3]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

7

## C. Defendant Ferguson

Plaintiff's allegations against Plaintiff Ferguson also fail to state a claim because of the complete lack of causal connection between any actions taken by Defendant Ferguson and any alleged constitutional deprivation. "Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). Here, the only "connections" that Plaintiff asserts between Defendant Ferguson and the alleged constitutional violations by Defendant Ricks are a single letter that Plaintiff claims to have sent to Defendant Ferguson informing him of the incident with Defendant Ricks, and vague accusations that Defendant Ferguson "conspir[ed] to promulgate a policy, as CEO of CCA, that clearly contradicts the Rules and Regulations and the Standard Operating Procedures of the Georgia Department of Corrections." (Doc. no. 1, pp. 7, 9.) It is clear that a single letter sent from the Plaintiff to Defendant Ferguson *after* the incident in question cannot even be classified as an action on the part of Defendant Ferguson, and thus fails to establish any causal connection. Additionally the vague allegations regarding Defendant Ferguson's promulgation of certain policies are insufficient to establish an affirmative causal connection in that Plaintiff does not establish that these policies even exist, much less that they somehow caused the alleged constitutional violations by Defendant Ricks. Plaintiff also fails to make any assertions that Defendant Ferguson, the CEO of a company that contracts to run WCF, is somehow involved in the day to day operations of the facility.

8

### D. General Conspiracy

Finally, to the extent Plaintiff suggests that there was some sort of conspiracy afoot between Defendants Kemp, Connor, Ferguson and Fields regarding the alleged retaliatory actions of Defendant Ricks, such allegations fail to state a claim upon which relief can be granted. That is, a conspiracy claim supported only by conclusory, vague, and general allegations may be dismissed. Kearson v. Southern Bell Tel. & Tel. Co., 763 F.2d 405, 407 (11th Cir. 1985) (*per curiam*); see also Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) ("[A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. . . It is not enough to simply aver in the complaint that a conspiracy existed."). To prove conspiracy under § 1983, a plaintiff must (1) prove the parties had a "meeting of the minds" or reached an understanding to violate the plaintiff's rights and (2) prove an actionable wrong to support the conspiracy. Bailey v. Board of County Comm'rs of Alachua County, Fla., 956 F.2d 1112, 1122 (11th Cir. 1992). "[T]he linchpin for conspiracy is agreement, which presupposes communication . . . ." Id. Here, Plaintiff does not offer any specifics on when or how an agreement between any of the Defendants may have been reached to violate Plaintiff's rights. Accordingly, Plaintiff has failed to state viable conspiracy claims, and thus, such claims should be dismissed.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's claims concerning the grievance appeals procedure, and conspiracy, as well as

Defendants Connor, Ferguson and Fields be **DISMISSED** from this case.[4]

SO REPORTED and RECOMMENDED this 14th day of September, 2010, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[4]In a simultaneously filed Order, the Court has directed that service of process be effected on Defendants Kemp and Ricks with respect to Plaintiff's First Amendment claims of retaliation.