# ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2012 JAN 31 P 3: 52

CLERK _____
SO. DIST. OF GA.

|  |  |  |
|---|---|---|
| EUGENE THOMAS, | ) | |
| Plaintiff, | ) | |
| v. | ) | CV 310-019 |
| KRISTY RICKS, Mailroom Clerk, and RALPH KEMP, Warden,[1] | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate currently incarcerated at Autry State Prison, in Pelham, Georgia, commenced this civil action pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP") in this case, which is now before the Court on Defendants' motion for summary judgment. (Doc. no. 29.) Plaintiff has filed a response in opposition to Defendants' motion. (Doc. no. 31.) Defendants have filed a reply to Plaintiff's response (doc. no. 34), and Plaintiff has filed a sur-reply (doc. no. 37). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART** and that a **FINAL JUDGMENT** in this case be entered in favor of Defendant Kemp only. Plaintiff's claim that Defendant Ricks retaliated against him for filing a grievance should proceed to trial.

---

[1] According to Defendants' motion for summary judgment, Defendant Ricks' first name is "Kristy." (Doc. no. 29, pp. 18-19.) The **CLERK** is **DIRECTED** to amend the docket accordingly.

## I. FACTS

Plaintiff was incarcerated at Wheeler Correctional Facility ("WCF") in Alamo, Georgia when the events forming the basis of this case occurred. Plaintiff's remaining claims[2] in this case concern his allegations that Defendant Ricks retaliated against him by withholding two books that he received in the mail; that Defendant Kemp retaliated against him by denying Plaintiff's grievance regarding the books; and that Defendant Ricks further retaliated against him by threatening to destroy the books or have them destroyed. The parties provide contrasting accounts of the events giving rise to the complaint.

According to Plaintiff, on April 20, 2009, Defendant Ricks, who at that time was working in the mailroom at WCF, came to his cell with two books that Plaintiff's friend had mailed to him. (Doc. no. 31, Pl.'s Decl. I,[3] p. 7; doc. no. 37, Pl.'s Decl. II, p. 8.)[4] Plaintiff states that in retaliation for an argument he had with Defendant Ricks regarding the sender and the subject matter of the books, Defendant Ricks wrongfully withheld his books. (Doc. no. 1, (hereinafter "Pl.'s Compl."), p. 6; Pl.'s Decl. I, p. 7; Pl.'s Decl. II, p. 8.) Plaintiff avers that he filed a grievance against Defendant Ricks regarding her withholding of his books; further, he

---

[2]Several other claims that Plaintiff attempted to assert in his complaint were dismissed when the complaint was screened pursuant to the IFP statute, 28 U.S.C. § 1915A. (See doc. nos. 15, 22.)

[3]Plaintiff has submitted two declarations: one with his response to Defendants' motion for summary judgment (doc. no. 31, pp. 7-10), and one with his sur-reply (doc. no. 37, pp. 6-8). The Court will refer to the declaration submitted with document number 31 as "Pl.'s Decl. I" and the declaration submitted with document number 37 as "Pl.'s Decl. II."

[4]As Plaintiff's two declarations, as well as his complaint, are sworn and describe facts based upon personal knowledge, they meet the requirements of 28 U.S.C. § 1746 and Fed. R. Civ. P. 56(c) and are sufficient to create an issue of material fact in response to Defendants' motion. See United States v. Four Parcels of Real Property, 941 F.2d 1428, 1444 n.35 (11th Cir. 1991).

avers that when Defendant Ricks made a later delivery to his cell on April 24, 2009, she told him that the books in question "were destroyed or would be destroyed" because he had filed the grievance against her. (Doc. no. 31, p. 4; Pl.'s Decl. I, p. 7; Pl.'s Decl. II, p. 8.) Plaintiff also avers that Defendant Ricks refused to return the books to the original sender or to forward the books to his new location, as required by prison policy, when he was transferred to Scott State Prison on May 5, 2009, fifteen days after the books were delivered to WCF. (Doc. no. 31, p. 4 & Ex. D, Ex. F; doc. no. 37, Ex. 1-C, Ex. 1-D; Pl.'s Decl. I, p. 8.)

Plaintiff also avers that he complained about Defendant Ricks' withholding of the books to Defendant Kemp, who was the Warden at WCF during the time period relevant to the instant action, but that Defendant Kemp wrongfully upheld Defendant Ricks' actions. (Pl.'s Compl., pp. 7-8; Pl.'s Decl. I, p. 10.) According to Plaintiff, Defendant Kemp failed to take action in order to retaliate against Plaintiff for a previous lawsuit that Plaintiff brought against officials at Coffee Correctional Facility ("CCF"), which is managed by Defendant Kemp's employer, the Corrections Corporation of America ("CCA").[5] (Pl.'s Compl., p. 8.) In this regard, Plaintiff avers that in September of 2008, Defendant Kemp served as a witness to settlement discussions between Plaintiff and counsel for CCF, Stephen E. Curry, who is also representing Defendants in this case. (Id.; Pl.'s Decl. I, pp. 9-10.) As noted above, Plaintiff avers that he was transferred to Scott State Prison on May 5, 2009; although Plaintiff does not claim to know what happened to his books, he states that the books were never forwarded to him as required by prison policy. (Pl.'s Decl. II, p. 8.)

Defendants disagree with Plaintiff's version of events. Defendant Ricks confirms that

---

[5]CCA manages both WCF and CCF. See http://www.cca.com/facilities/?state=GA (last visited on Jan. 16, 2012).

she was assigned to work in the mailroom at WCF in April of 2009, and that two books addressed to Plaintiff were received on April 20, 2009. (Doc. no. 29, Ricks Aff. I, p. 18.)[6] However, she avers that because Plaintiff had not requested or received prior approval for the books from his Unit Manager, nor had he submitted a package request form, he could not receive the books. (Id.; Ricks Aff. II, p. 10.) More specifically, she avers:

> As to books coming from [a] publisher, the form must indicate that fact and the amount deducted from [Plaintiff's] inmate account. For books sent from sources other than the publisher, the form indicates zero as the amount deducted from the account. In either event, the package request must have prior approval.

(Ricks Aff. I, p. 18.)

Defendant Ricks further avers that she went to Plaintiff's cell and showed him the books and explained why he could not get them. (Id. at 19; Ricks Aff. II, p. 10.) Defendant Ricks states that Plaintiff "at first claimed they were legal materials, although they were clearly not." (Ricks Aff. I, p. 19.) She avers that she gave him a mail rejection form, which he refused to sign, but that she left a copy of the rejection form with him anyway. (Id.; Ricks Aff. II, p. 10.)

According to Defendant Ricks, she told Plaintiff, and the rejection form also explained, that he would have "thirty days to either have the books mailed out or picked up." (Ricks Aff. I, p. 19; Ricks Aff. II, p. 10.) She states that she returned the books to the property room and had no further contact with Plaintiff or the books and that she did not return to Plaintiff's cell on April 24, 2009. (Ricks Aff. I, p. 19; Ricks Aff. II, pp. 10-11.) Defendant Ricks asserts

---

[6]Both Defendants provide two affidavits: one each in their motion for summary judgment (doc. no. 29), and one each in their reply (doc. no. 34). The Court will refer to the affidavits submitted with document number 29 as "Ricks Aff. I" and "Kemp Aff. I" and the affidavits submitted with document number 34 as "Ricks Aff. II" and "Kemp Aff. II."

that her actions were "required by [CCA] prison policy," and she did not refuse to give Plaintiff the books in an effort to punish him. (Ricks Aff. I, p. 19; Ricks Aff. II, p. 11.) Furthermore, she avers, she did not tell anyone to dispose of the books, and although CCA policy provides that "all of the inmate's incoming mail is forwarded for thirty five days" following a transfer, she was not involved in the disposition of Plaintiff's books and "ha[s] no idea whether they were picked up, mailed, destroyed, or if there was some other disposition." (Ricks Aff. I, p. 19; Ricks Aff. II, p. 11.)

According to Defendant Kemp, CCA policy requires that an inmate have prior approval for all incoming packages "through the use of a package request form." (Kemp Aff. I, p. 16; Kemp Aff. II, p. 8.) Further,

> There are two reasons for this. The first is security. Prior approval decreases the likelihood of contraband coming into the prison since there is the ability to confirm ahead of time [that] the shipment was ordered by the prisoner from an original publisher and that both the prisoner and staff knew it was coming. Second, by having this prior knowledge, reduced labor [can] be devoted to searching packages and prison resources [are] not unnecessarily diverted to the mail room function.

(Kemp Aff. I, pp. 16-17.) Defendant Kemp avers that he denied Plaintiff's grievance regarding the books because Plaintiff had not complied with the package request policy, "rather than because of any grievance or lawsuit he may have filed." (Kemp Aff. II, p. 8.) Defendant Kemp concedes that "it is possible CCA's attorney [Stephen E. Curry] used my office for a meeting with [Plaintiff] because we do not have a separate conference room for that purpose," but he maintains that he was unaware that Plaintiff had previously filed a lawsuit against CCF officials and "ha[s] not discussed any prior lawsuits with [Plaintiff] or with [CCF] staff." (Id.) Defendant Kemp further avers that he had no direct involvement with the disposition of Plaintiff's books. (Id.) More specifically, he contends that he did not order the books to be

destroyed, was unaware of their destruction – or if they were even destroyed – and as far as he is aware, their disposition was handled in accordance with prison policy. (Id.)

Plaintiff disputes that WCF has a package request policy, or if there is such a policy, that it applies to the books in question. (Doc. no. 31, p. 3; Pl.'s Decl. I., p. 8.) In this regard, Plaintiff avers that he has previously received other books without having prior approval for them. (Doc. no. 31, p. 3 & Ex. B; Pl.'s Decl. I, p. 8.) Furthermore, he states that Georgia Department of Corrections ("GDOC") policies required Defendant Ricks to return the books to the sender or to forward them to his new place of incarceration, but that she failed to do either of these things. (Doc. no. 31, p. 3 & Ex. D, Ex. E; Pl.'s Decl. I, p. 8.) By contrast, Defendants assert that CCA package request policies, and not GDOC package request policies, applied during the time of the events giving rise to the above-captioned case; they further assert that they complied with the CCA package request policy in denying Plaintiff his books. (Kemp Aff. II, pp. 7-8; Ricks Aff. II, p. 11.) Plaintiff disputes this assertion, and he attaches a number of exhibits in support of his argument that CCA's package request policy is governed by GDOC policies and procedures. (Doc. no. 37, p. 4 & Ex. 1-C, Ex. 1-D; Pl.'s Decl. II, p. 6.)

Plaintiff and Defendants *are* in agreement, however, that WCF follows GDOC grievance policies (Kemp Aff. II, p. 7; doc. no. 31, p. 3), which are set forth in Standard Operating Procedure ("SOP") IIB05-0001. In this regard, the SOP provides that once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. Id. § VI(B). If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five (5) business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). If the inmate is not

satisfied with the Warden's response to the formal grievance, he has 5 business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety (90) calendar days after receipt of the grievance appeal to respond. Id. § VI(D)(2), (5). In his complaint, Plaintiff states that he filed an informal and formal grievance regarding his claims, which were both denied. (Pl.'s Compl., p. 3.) Although he appealed the denial of his formal grievance, Plaintiff explains that he did not receive a response from the Office of the Commissioner within the 90-day period set out in the SOP and instead waited for a response for eight months before filing suit. (See id.)

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Applicable substantive law identifies which facts are material in a given case.[7] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party."

---

[7] The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

Four Parcels of Real Prop., 941 F.2d at 1438. On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Exhaustion

In their motion for summary judgment, Defendants first argue that Plaintiff's claims are barred by the Prison Litigation Reform Act ("PLRA") because he "fails to allege exhaustion of his available prison grievance remedy." (Doc. no. 29, pp. 9-11 (emphasis added).) Section

8

1997e(a) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

Defendants misapprehend PLRA's pleading requirement. The Supreme Court has held that under the PLRA, exhaustion of administrative remedies is an affirmative defense. Jones v. Bock, 549 U.S. 199, 215 (2007). Plaintiff is not required to allege exhaustion of the grievance procedure in order to bring his claim; the burden to show that Plaintiff failed to exhaust his administrative remedies lies with Defendants. Id. at 216. However, Defendants have not provided the Court with any evidence to show that Plaintiff has failed to exhaust his administrative remedies.

Defendants instead argue that they are entitled to dismissal based solely on Plaintiff's pleadings. Specifically, Defendants refer to Plaintiff's statement in his complaint that he filed an informal grievance and a formal grievance, which were both denied, and that he had not received a response to the appeal of his formal grievance despite waiting for eight months. (Doc. no. 29, p. 9 (citing doc. no. 1, p. 3).) Of course, the Court is mindful that if the allegations in the complaint, taken as true, demonstrate that a prisoner's claims are barred by an affirmative defense, the complaint is subject to dismissal for failure to state a claim upon which relief can be granted. See Clark v. Georgia Bd. of Pardons and Paroles, 915 F.2d 636,

9

640-41 (11th Cir. 1990) (explaining that district court may dismiss prisoner's complaint "if [it] sees that an affirmative defense would defeat the action," including the prisoner's failure to exhaust "alternative remedies"). However, it is simply not clear to the Court that Plaintiff's claim is barred by an affirmative defense in this case.

Defendants have provided no explanation for why the information regarding exhaustion in Plaintiff's complaint, taken alone, entitles them to dismissal,[8] nor have they submitted any grievance filing history. Simply put, Defendants have not shown how Plaintiff has failed to exhaust administrative remedies. The Court therefore rejects Defendants' exhaustion argument and will proceed to resolve the matter on the merits.

### C. Plaintiff's Retaliation Claims

Following screening of the complaint, the Court allowed Plaintiff to proceed with his claims of retaliation against Defendants Ricks and Kemp. (Doc. no. 17, p. 4.) Specifically, Plaintiff asserts: (1) Defendant Ricks retaliated against him by withholding the books he received in the mail after he had an argument with her; (2) Defendant Kemp retaliated against him by upholding Defendant Ricks' withholding of the books because Plaintiff had previously brought a suit against another prison managed by Defendant Kemp's employer, CCA, to which Defendant Kemp served as a witness to settlement discussions; and (3) Defendant Ricks retaliated against him by destroying or threatening to destroy the books because he filed a

---

[8] If Defendants' argument is that Plaintiff has failed to exhaust because the appeals unit had not yet resolved the appeal of his grievance at the time he filed his complaint, this argument must fail. The Court is aware that an inmate must complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*). However, as Plaintiff correctly points out (doc. 31, p. 3), he is only required to wait 90 days for a response from the appeals unit. SOP IIB05-0001 § VI(D)(5). Here, Plaintiff waited well over 90 days for a response before filing his original complaint on February 24, 2010. (Pl.'s Compl., p. 3.)

grievance against her. (See generally doc. nos. 1, 17, 31, 37.) Defendants argue that they are entitled to summary judgment because they did not retaliate against Plaintiff and did not destroy or order the destruction of his books, and because receipt of the books was contrary to prison policy since Plaintiff had not filled out the required package request form. (See generally doc. nos. 29, 34.) The Court will address each of Plaintiff's claims of retaliation in turn.

The First Amendment prohibits prison officials from retaliating against inmates for filing lawsuits or administrative grievances, or for exercising the right of free speech. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). Nor may prison officials burden an inmate's First Amendment rights "with practices that are not reasonably related to legitimate penological objectives" or "act with the intent of chilling that First Amendment right." Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (per curiam) (discussing alleged violation of First Amendment right of access to the courts) (citations omitted).

The Eleventh Circuit has recently held that to prevail on a retaliation claim, a prisoner "must prove that: (1) his speech or act was constitutionally protected; (2) the defendant[s'] retaliatory conduct adversely affected the protected speech; and (3) there is a causal connection between the retaliatory actions and the adverse effect on speech." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011) (citations omitted). Where a plaintiff has failed to establish a causal connection between his protected conduct and the alleged retaliatory action, summary judgment for the defendant is proper. Farrow, 320 F.3d at 1248-49. Stated another way, "A prisoner can establish retaliation by demonstrating that the prison official's actions were 'the result of his having filed a grievance concerning the conditions of his imprisonment.'" Id. at 1248 (citing Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989) (per curiam)). The

11

Eleventh Circuit has ruled that "[d]irect evidence of an illegal motive will usually suffice to create a genuine issue of fact and preclude summary judgment." Harris, 65 F.3d at 917.

Moreover, the Eleventh Circuit recently held that a prisoner bringing a retaliation claim under § 1983 must present evidence of a "retaliatory animus" on the part of the accused defendant in order to establish causation and survive a motion for summary judgment by that defendant. O'Bryant v. Finch, 637 F.3d 1207, 1219-20 (11th Cir. 2011) (*per curiam*); see also Harris, 65 F.3d at 916 (affirming summary judgment for the defendant because the plaintiff "produced nothing beyond his own conclusory allegations, suggesting that [the defendant's] actions in compliance with the strip search regulations were motivated by retaliatory animus"). Further, "Once the plaintiff . . . establish[es] that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he . . . prevail[s] on . . . summary judgment." Moton, 631 F.3d at 1341-42 (quoting Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008)) (internal quotation marks omitted); accord Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle ("Mount Healthy"), 429 U.S. 274, 285 (1977).

In addition, restrictions on a prisoner's First Amendment rights are permissible provided the restrictions are reasonably related to legitimate penological interest. Turner v. Safley, 482 U.S. 78, 89 (1987). In analyzing whether a prison regulation is reasonably related to a legitimate penological interest under Turner, courts generally consider the following factors: (1) whether the regulation is rationally related to legitimate and neutral governmental objectives; (2) whether alternative means of exercising the constitutional right remain available to inmates; and (3) "the impact that accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison." Thornburgh v. Abbott, 490 U.S. 401,

12

414-18 (1989); Owen v. Wille, 117 F.3d 1235, 1237 (11th Cir. 1997). Additionally, courts favor regulations that require prison officials to make "individualized" determinations over regulations that simply make "blanket" prohibitions of certain publications. Owen, 117 F.3d at 1237. Finally, "the existence of obvious, easy alternatives" that accommodate an inmate's rights "at *de minimis* cost to valid penological interests" may be evidence "that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." Thornburgh, 490 U.S. at 418 (quoting Turner, 482 U.S. at 90-91).

### 1.    Defendant Ricks' Withholding of Plaintiff's Books

Plaintiff first asserts that Defendant Ricks initially retaliated against him when she refused to give him the two books he received on April 20, 2009 because of an argument he had with her about the books. (Pl.'s Compl., p. 6.) Plaintiff meets the first prong of Moton as it is undisputed that prisoners have a First Amendment right to receive information in prison, such as the books in question. Bell v. Wolfish, 441 U.S. 520, 572-73 (1979) ("That individuals have a First Amendment right to receive information and ideas is beyond dispute."). However, as explained below, Plaintiff fails to satisfy Moton's third prong by showing that Defendant Ricks was subjectively motivated to punish him for exercising his First Amendment rights.

First, Plaintiff alleges that he was denied access to his books because he and Defendant Ricks had an *argument* about the books, not because Ricks was motivated to punish him for his right to receive the books in the first place. (Pl.'s Compl., p. 6.) Stated another way, Plaintiff may have had a right to receive books, and Defendant Ricks' withholding of his books may have adversely affected this protected right, satisfying the first and second prongs of Moton, but the causation element required to establish retaliation is not present because Plaintiff has not shown that his protected conduct was a motivating factor for any harm he suffered. Moton,

13

631 F.3d at 1341; O'Bryant, 637 F.3d at 1219.

Second, even if Plaintiff were able to satisfy Moton's third prong, Defendant Ricks is able to show that she would have taken the same action in the absence of the protected activity because Plaintiff's receipt of the books was contrary to CCA policy. See Moton, 631 F.3d at 1341-42. The record shows that Plaintiff had not requested or received prior approval for the books from his Unit Manager, nor had he submitted a package request form. (Ricks Aff. 1, p. 18.) As such, Plaintiff was not permitted to receive the books according to CCA's package request policy, and thus Defendant Ricks was required to withhold the books. (Id. at 19.)

In this regard, the Court finds that although CCA's package request imposes a burden on Plaintiff's First Amendment rights, it is "reasonably related to legitimate penological objectives," and thus a permissible restriction on those rights. Harris, 65 F.3d at 916; see also Turner, 482 U.S. at 89. As explained below, because the Court finds that the package request policy is a permissible restriction on Plaintiff's First Amendment rights, there was nothing wrong with enforcing that policy.

Under the first prong of Turner, the record reflects that requiring prisoners to complete a package request form in advance of receiving packages decreases the likelihood that contraband will enter the prison because prison officials can confirm ahead of time that an inmate ordered a package and that the inmate and prison staff anticipate the delivery. (Kemp Aff. 1, pp. 16-17.) In addition, the package request policy reduces the labor that would otherwise be diverted to searching packages in the prison mail room. (Id.) Courts have long recognized security and administrative concerns arising from the risk of contraband in the prison setting and have upheld restrictions on packages that are designed to address those concerns. Bell, 441 U.S. at 550-51 (upholding restrictions on books that were not sent directly

14

from publisher because contraband could easily be smuggled into the pages of books sent from other sources, requiring laborious inspection by prison staff). Thus, the Court finds that the package request policy is rationally related to WCF's legitimate concerns for prison security and administration. Turner, 482 U.S. at 89.

Moreover, the package restriction at issue here is not like the outright ban addressed in Bell, 441 U.S. at 572-73. Indeed, Plaintiff could have simply completed the package request form ahead of time to obtain his books. Thus, Plaintiff had an alternative means of exercising his right to receive information by completing the form. Furthermore, as noted above, the package request policy is designed to prevent contraband in the prison, and accommodating the right to receive the books *without* the package request restriction has the potential to threaten the security of guards and other inmates at WCF.

Furthermore, Plaintiff has not shown that "obvious, easy alternatives" are available at *de minimis* cost to WCF's security and administrative interests. In short, the Court finds that the package request policy is rationally related to legitimate penological interests and therefore does not run afoul of the First Amendment. Thornburgh, 490 U.S. at 414-18; Owen, 117 F.3d at 1237. As it is undisputed that Plaintiff failed to comply with the package request policy by obtaining prior approval for his books, it follows that Defendant Ricks was required to withhold Plaintiff's books when they were received without prior approval. Thus, even if Plaintiff was able to satisfy Moton's third prong, Defendant Ricks is entitled to summary judgment as to his claim that she withheld his books because she can show that she would have withheld Plaintiff's books regardless of any protected activity. 631 F.3d at 1341.

Finally, Plaintiff raises a number of arguments for why the package request policy should not entitle Defendants to summary judgment, which the Court will summarize briefly

15

here: (1) he argues that no package request policy exists because he has received a book in the past without prior approval (doc. no. 31, p. 3 & Ex. B; doc. no. 37, pp. 3, 5); (2) somewhat confusingly, he argues that there *is* a package request policy, but that the only time books must be approved is when an inmate is purchasing books with money from the inmates' prison trust account (doc. no. 37, pp. 3, 5 & Ex. 1-A, 1-B); (3) he argues that once he filed a grievance regarding his books, this should have placed a "hold" on his books until the grievance was resolved (doc. no. 31, p. 6 & Ex. G); and (4) even if there is a package request policy, he argues that once Defendant Ricks determined that he did not have prior approval for the books, she should have forwarded them to Scott State Prison, where he was transferred, or she should have complied with GDOC policies by returning them to the original sender (doc. no. 31, p. 4 & Ex. D, Ex. F; doc. no. 37, Ex. 1-C, Ex. 1-D).

Plaintiff's various arguments all fail. At most, Plaintiff has alleged that Defendants improperly applied prison policy. However, a violation concerning state law or policies does not amount to a constitutional violation for which Plaintiff can obtain relief under § 1983, as § 1983 is not concerned with a violation of state law/policies. Knight v. Jacobson, 300 F.3d 1272, 1276 (11th Cir. 2002) ("While the violation of state law may (or may not) give rise to a state tort claim, it is not enough by itself to support a claim under § 1983."). In sum, Defendants' motion for summary judgment should be **GRANTED** as to Plaintiff's claim that Defendant Ricks retaliated against him by withholding books for which he had not obtained the necessary prior approval.

### 2. Defendant Kemp's Denial of Plaintiff's Grievance Regarding the Books

The Court next turns to Plaintiff's claim that Defendant Kemp retaliated against him by upholding Defendant Ricks' withholding of his books. Plaintiff asserts that Defendant

Kemp denied his grievance against Defendant Ricks to retaliate against Plaintiff for bringing a prior suit against officials at CCF, to which Defendant Kemp allegedly served as a witness to settlement discussions. (Pl.'s Compl., pp.7-8.) Defendant Kemp denies that he was aware of Plaintiff's prior litigation against CCF or that he was involved in any settlement discussions that may have taken place. (Kemp Aff. I, p. 6; Kemp Aff. II, p. 8.) Instead, Defendant Kemp states that he denied Plaintiff's grievance regarding the books because Plaintiff had not complied with the package request policy and not because of any prior litigation Plaintiff brought against CCF. (Kemp Aff. II, p. 8.)

Plaintiff clearly satisfies the first prong of Moton, as prisoners have a right of access to the courts, including a right to file litigation. Harris, 65 F.3d at 917. Yet even if Plaintiff is able to satisfy Moton's remaining prongs, the record shows that Defendant Kemp would have denied Plaintiff's grievance regarding the books even if Plaintiff had not filed his previous suit against CCF officials because Plaintiff's receipt of the books was contrary to CCA policy. Moton, 631 F.3d at 1341-42.

Here, Defendant Kemp has clearly stated in a sworn affidavit that he denied Plaintiff's grievance over the books because Plaintiff failed to comply with the package request policy. (Kemp Aff. II, p. 8; see also doc. no. 31, Ex. A (denial of Plaintiff's formal grievance).) As explained above, Plaintiff was required to comply with the package request policy in order to receive the books in question, yet he failed to do so. Thus, Defendant Kemp would have denied Plaintiff's grievance regarding the withholding of his books even if Plaintiff had never brought suit against CCF officials.

Accordingly, Defendant Kemp is entitled to judgment as a matter of law regarding Plaintiff's allegations of retaliation against him, and Defendant Kemp's request for summary

judgment should be **GRANTED**.

### 3. Defendant Ricks' Threatened Destruction of Plaintiff's Books

Finally, the Court turns to Plaintiff's argument that Defendant Ricks retaliated against him by destroying or threatening to destroy his books in retaliation for a grievance he filed against her. For the reasons explained below, the Court finds that there are genuine issues of material fact as to this claim, rendering summary judgment inappropriate at this stage of the proceedings.

As a threshold matter, it is clear that an inmate's right to use a prison grievance procedure is protected under the First Amendment. Farrow, 320 F.3d at 1249. Moreover, punitive action taken in response to the prisoner's exercise of his First Amendment rights need not amount to the violation of a "separate and distinct constitutional right" to constitute unlawful retaliation. Id. Thus, actions which might not alone violate a prisoner's rights become acts of constitutional magnitude when they serve as penalties for the exercise of First Amendment rights. See id. It is undisputed that Plaintiff filed a grievance against Defendant Ricks regarding her refusal to give him his books. Accordingly, Plaintiff's was engaged in constitutionally protected speech, and his allegation that Defendant Ricks threatened to destroy his books to punish him for engaging in protected speech – if true – constitutes unlawful retaliation. See Moton, 631 F.3d at 1341; Brodheim v. Cry, 584 F.3d 1262, 1269-70 (9th Cir. 2009) ("[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights.") (citations omitted); Burgess v. Moore, 39 F.3d 216, 218 (8th Cir. 1994) ("[A] threat of retaliation is sufficient injury if made in retaliation for an inmates's use of prison grievance procedures.").

Here, Plaintiff avers that four days after his initial encounter with Defendant Ricks, she

returned to his cell on April 24, 2009 and told him that she planned to destroy his books or have them destroyed because he had filed a grievance against her.[9] (Doc. no. 31, Ex. C; Pl.'s Decl. I, p. 7.) Plaintiff argues that Defendant Ricks is not entitled to summary judgment with regard to this claim because she cannot show that she would have destroyed or threatened to destroy his books even if he had never filed the grievance. (Doc. no. 31, p. 5 (citing Mount Healthy, 429 U.S. at 287).) Defendant Ricks, by contrast, avers that she did not destroy or order the destruction of Plaintiff's books, and she has no idea what happened to them after she took them to the property room on April 20, 2009. (Ricks Aff. I, p. 19.) Defendant Ricks further asserts that she had no further contact with Plaintiff following their initial encounter on April 20, 2009, and that she did not return to Plaintiff's cell on April 24, 2009, as Plaintiff alleges. (Ricks Aff. II, p. 11.)

The Court is mindful that Plaintiff cannot simply rely on his pleadings that Defendant Ricks mentioned an intent to retaliate against him by threatening to destroy his books or to have them destroyed when she returned to his cell following their initial encounter. (See Pl.'s Compl., p. 7.) Rather, Plaintiff must instead produce evidence to demonstrate a genuine dispute as to a material fact. Morris, 663 F.2d at 1034. Here, Plaintiff supported the allegations in his complaint by producing evidence that on April 24, 2009, he had contact with Defendant Ricks, whose signature appears on a property inventory form addressed to Plaintiff that was completed on that date. (See doc. no. 31, Ex. C.) Moreover, Plaintiff asserts in a sworn declaration that Defendant Ricks returned to his cell on that date and told him that his books "were destroyed because I'd filed a grievance about her retaliatorily (sic) confiscating them." (Pl.'s Decl. I,

---

[9]Under Fed. R. Evid. 801(d)(2)(A), Defendant Ricks' statement is nonhearsay as an admission by a party-opponent.

p. 7.) Thus, Plaintiff has produced evidence of the "retaliatory animus" required to show causation between his filing of a grievance against Defendant Ricks, and her alleged threat to destroy his books. See O'Bryant 637 F.3d at 1219-20.

In sum, an issue of fact remains whether Defendant Ricks threatened to destroy Plaintiff's books because Plaintiff had filed a grievance against her. In other words, the parties clearly dispute facts that are material to Plaintiff's claim, and a reasonable jury "could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. Thus, summary judgment is inappropriate at this stage of the proceedings, and the Court accordingly finds that Defendant Ricks' request for summary judgment as to Plaintiff's claim that she retaliated against him for filing a grievance should be **DENIED**.

## III.    CONCLUSION

For the reasons set out above, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment (doc. no. 29) be **GRANTED IN PART** and **DENIED IN PART** and that a **FINAL JUDGMENT** in this case be entered in favor of Defendant Kemp only. Plaintiff's claim that Defendant Ricks retaliated against him for filing a grievance should proceed to trial.

SO REPORTED and RECOMMENDED this 3/01 day of January, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

20